**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v. Criminal No. 3:22-cr-132-2

ANTONIO THOMAS RUFFIN,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANT'S SUPPLEMENTAL MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C) AND U.S.S.G. AMENDMENT 821 (the "MOTION") (ECF No. 221). Having considered the MOTION, the Government's RESPONSE TO MOTION FOR REDUCTION (ECF No. 226), the DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE FOR SUPPLEMENTAL MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(C) AND U.S.S.G. AMENDMENT 821 (ECF No. 244), and the record herein, the defendant's MOTION was DENIED.

**BACKGROUND**

On September 7, 2022, a criminal indictment was filed that charged Antonio Thomas Ruffin ("Ruffin") with Conspiracy to Participate in an Animal Fighting Venture. (ECF No. 1). On March 2, 2023, Ruffin entered the WAIVER OF AN INDICTMENT (ECF No. 62) and pled guilty to a two-count Criminal Information. (ECF No. 59-64):

1) Transportation of an Animal (to wit, a pit bull type dog for

the purpose of having the animal participate in an animal fighting venture, and aiding and abetting in violation of 7 U.S.C. §§ 49 and 2; and

2) Possession of Animal (to wit, 14 pit bull type dogs) for the purpose of having the animal participate in an animal fighting venture, and aiding and abetting in violation of 7 U.S.C. §§ 49 and 2.

(ECF No. 59).

The Presentence Investigation Report (ECF No. 105) outlines Ruffin's participation in a wide-ranging conspiracy to sponsor and exhibit dogs in an animal fighting venture. (ECF No. 105 ¶¶ 18, 21-29; ECF No. 111). Ruffin's direct involvement in the conspiracy included breeding dogs for fighting, training dogs for fighting, teaching others in the conspiracy to become better dog trainers, and coordinating locations to fight the dogs. (See ECF No. 64 at 1-3).

On July 24, 2023, Ruffin was sentenced to 36 months incarceration on the two counts of conviction. (ECF 194). At the sentencing hearing, the Court varied upward from the advisory guidelines range of 12 to 18 months to impose the 36-month sentence after full consideration the applicable 18 U.S.C. § 3553(a) factors. (ECF No. 195 at 3). Ruffin did not appeal the conviction or the sentence.

On April 15, 2024, Ruffin filed the MOTION and asked the

Court to reduce the sentence based on a new calculation of his advisory guidelines under Amendment 821 to the Sentencing Guidelines, which would have afforded Ruffin a two-level reduction in his Total Offense Level. Upon retroactive application of this provision to Ruffin, the Total Offense level would be reduced from 13 to 11, and, with a Criminal History Category I, the new advisory guidelines range would be 8 to 14 months. (ECF No. 204 at 1). Ruffin asks the Court to reduce the sentence to 8 months, the bottom of the new advisory range. (MOTION at 1). The United States agrees that Amendment 821 applies to Ruffin. However, the United States maintains that the correct amended sentence, based on the § 3553(a) factors, would be 32 months. (ECF No. 226 at 5).

## DISCUSSION

### A. Legal Standard

The applicable statute, 18 U.S.C. § 3582(c)(2), provides that the Court "may not modify a term of imprisonment once it has been imposed except [...] in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" In such a case, the Court may reduce the sentence if such a reduction, after a consideration of the factors set forth in § 3553(a), would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has set forth a two-step process for determining whether a reduction is appropriate under § 3582(c)(2). First, the Court must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized," including calculating "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)). However, in making this determination, courts "shall leave all other guideline application decisions unaffected." Dillon, 560 U.S. at 827 (internal citation omitted). Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Id.

**B. Analysis**

In this case, Ruffin moves under 18 U.S.C. § 3582(c)(2) to seek a reduced sentence based on Part B, Subpart 1 of Amendment 821 to the Sentencing Guidelines. The Sentencing Commission put into effect Part B, Subpart 1 to Amendment 821 ("Amendment 821") to the Sentencing Guidelines on November 1, 2023. Amendment 821 added and edited the now operative language of U.S.S.G. § 4C1.1(a), which provides a two (2) offense level reduction for offenders

that have zero criminal history points and meet specified criteria. On August 24, 2023, the Sentencing Commission voted in favor of giving retroactive effect to Amendment 821 beginning on February 1, 2024.

The first step of the Dillon analysis is not in dispute. Ruffin meets all the criteria under U.S.S.G. § 4C1.1(a). See Amendment 821 Worksheet (ECF No. 204). The Presentence Investigation Report in this case established that Ruffin had a Total Offense Level of 13, and, with a Criminal History Category I, an advisory guidelines range of 12 to 18 months. (ECF No. 105 ¶ 46). Had Amendment 821 been in effect at the time of sentencing for Ruffin, the probation officer correctly calculated that a reduction of two levels would result in a Total Offense Level of 11, and, with a Criminal History Category I, a new advisory guidelines range of 8 to 14 months.

The second step of the Dillon analysis is controverted. Dillon's second step requires analysis of the § 3553(a) factors and a determination of whether the requested reduction, pursuant to 18 U.S.C. § 3582(C) and U.S.S.G. Amendment 821, is warranted under the circumstances of this case. To make this determination, this Court looks to its reasoning for granting the Government's motion for an upward variance (ECF No. 135) and examines whether granting the requested reduction would be in line with the policy underlying Amendment 821. The Court will start with the former.

When granting the upward variance, the Court took into consideration the "exceptional scale of the dog-fighting conspiracy, the defendant's disregard for the law, his extreme cruelty, and evidence of recidivism." (ECF No. 195 at 3). Those facts, all pertinent under § 3553(a)(1), led to the imposition of the 36-month sentence and they have not changed. In particular, the nature and circumstances of this case weigh heavily in favor of retaining the sentence that was the result of the upward variance. The Presentence Investigation Report provided an overview of the video material that Ruffin, alongside his co-conspirators, kept in their individual files and posted online. ECF No. 105 ¶ 22. Ruffin was involved in that filming and the distribution of violent videos and images of fighting dogs. In one such instance, the dogs in the video were described as "covered in blood, with gashes and torn flesh, including one dog with its ear badly torn." Id. The record established the "exceptional" scale of the conspiracy and how deeply Ruffin was involved in it. The Indictment, Criminal Information, and Statement of Facts show that beginning no later than December 22, 2017, and continuing through at least August 2021, Ruffin and his co-conspirators engaged in egregious behavior.

> Specifically, they (a) purchased, acquired, bred, and maintained a supply of pit-bull type dogs for use in dog fights; (b) trained and conditioned pit bull-type dogs to fight in dog fights; (c) discussed, by cellphone and through text messages, dog fighting, the results of

> certain dog fights, and the breeding, selling, and transportation of dogs for the purposes of dog fighting; (d) posted, obtained, shared, and forwarded information about dog bloodlines and pedigrees, including to and from dog fighting websites; (e) sponsored and exhibited dogs in dog fights, including dogs that they had transported in interstate commerce; (f) exhibited dogs during dog fights and placed bets on those dog fights; (g) researched and identified fighting-dog bloodlines and wins and losses of individual fighting dogs, for purposes of breeding dogs to maximize the aggressiveness of offspring; (h) learned and employed dog training techniques to maximize the aggressiveness and fighting capabilities of dogs and acquired, maintained, and used equipment to train fighting dogs, including but not limited to weighted dog collars, heavy dog chains, dog treadmills, and dog shock collars with a remote activator; (i) learned and employed training and feeding regimes for fighting dogs, called "keeps," and used those keeps in the weeks leading up to a contracted dog fight; (j) acquired and maintained medical equipment for purposes of attempting to treat dogs injured during dog fights, without the assistance or scrutiny of a veterinarian; (k) acquired and shared information, advice, and techniques with one another and other-conspirators (both known and unknown); (l) traveled to and attended dog fights in Virginia and other states, and shipped and/or transported dogs out of and into Virginia for such purposes; (m) used instrumentalities of interstate or foreign commerce, including cellular phones and the internet, to communicate with each other and with various other individuals, known and unknown, within and outside the Eastern District of Virginia, about aspects of dog fighting; and (n) provided funding for expenses associated with dog fighting, including paying for dog food, medicine and supplements for dogs and travel expenses for transporting dogs.

ECF No. 105 ¶ 23.

Further, Ruffin presented a risk of recidivism. Before being prosecuted, Ruffin was twice contacted by law enforcement in connection with dogfighting related activities, yet he nontheless continued in the conspiracy and even took action to hide his

illegal actions from detection by law enforcement. In December 2014, Baltimore City Police seized 12 dogs, many of which had wounds and scars consistent with fighting wounds and a variety of dogfighting paraphernalia from Ruffin's home. (ECF No. 105 ¶ 30). Six years later, in 2020, law enforcement executed a second search warrant at his home and seized 14 dogs and dogfighting paraphernalia. (ECF No. 105 ¶ 29). This second seizure notwithstanding, Ruffin persisted in breeding dogs, setting up fights, and sharing dogfighting videos until at least August 2021. (See ECF No. 64; ECF No. 105 ¶ 28). This continued disrespect for the law was the basis for finding his high likelihood of recidivism, notwithstanding that Ruffin had a Criminal History Category I.

Now, Ruffin has tendered evidence that he has made steps towards rehabilitation while serving his sentence. The Court may take into consideration the rehabilitative efforts the defendant made after the date of his offense or conviction. See Pepper v. United States, 562 U.S. 476, 481 (2011) ("When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction."). While incarcerated, Ruffin has taken courses towards earning his G.E.D. and has received a certificate of completion for the following: Parenting Phase I; Environmental Health & Safety Competency Training; and Integrated Management

Systems Awareness Training. (ECF No. 222-1 at 1-3). Ruffin also has been engaged in warehouse work while at F.C.I. Schuylkill, and he has submitted positive letters of support from his former coworkers indicating that he may have employment upon release. (ECF No. 222-1 at 4-5).

At the second step of Dillon, the Court considers whether, "in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827. In view of the facts discussed above, granting a reduction to the sentence in this case would not further the relevant policies behind Amendment 821 even in light of the mitigating rehabilitation submitted by Ruffin.

Amendment 821 "provided a targeted decrease of two level from the offense level determined under Chapters Two and Three for offenders who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors." U.S. SENT'G COMM'N, 2023 AMENDMENTS IN BRIEF (2023). In its "Reason for Amendment", the Sentencing Commission stated that Amendment 821 was based on recidivism data that showed "offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point." U.S. SENT'G COMM'N, AMENDMENT TO THE SENTENCING GUIDELINES, POLICY

STATEMENTS, OFFICIAL COMMENTARY, AND STATUTORY INDEX (2023) (citing U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021)). The Sentencing Commission's previous report "concluded that 'zero-point offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." Id. The distinction between a zero-point offender and a one-point offender is immaterial in this case, because Ruffin has shown that he was willing to continue breaking the law even though he was twice given chances to exit the world of dogfighting in 2014 and 2020 before again being caught and arrested in 2021. ECF No. 105 ¶¶ 28-30. Thus, on this record, the Court cannot find that the reduction afforded by Amendment 821 is warranted here, "under the particular circumstances of the case." Dillon, 560 U.S. at 827.

In view of the facts in this case and their impact on the § 3553(a) factors, Ruffin has not carried his burden to show that the facts that led to the upward variance and a sentence of 36 months have changed or that the Amendment 821 reduction is appropriate. The Court continues to believe that a sentence variance to 36 months is warranted based on the "exceptional scale of the dog-fighting conspiracy, the defendant's disregard for the law, his extreme cruelty, and evidence of recidivism." (ECF No. 195 at 3). That sentence is necessary to deter Ruffin and to

protect the public from further crimes by Ruffin as well as to deter other from like conduct.

**CONCLUSION**

For the foregoing reasons, the defendant's MOTION was DENIED.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 4, 2025
REP